21-CV-5596 (PAE)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JASON CIANCIOTTO, on behalf of his minor son, D.S.,

Plaintiffs,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION,
BOARD OF EDUCATION OF THE CITY SCHOOL
DISTRICT OF THE CITY OF NEW YORK, BRIDGET
EDWARDS, ERIKKA SHARPE, PETER BLOCH,
ERIN LALOR, ALEXANDER ANGUEIRA, and
CYNTHIA KERNS,

Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS THE
COMPLAINT**

***GEORGIA M. PESTANA***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Copatrick Thomas*
*Tel: (212) 356-0885*

## <u>TABLE OF CONTENTS</u>

**PRELIMINARY STATEMENT** ............................................................................................... 1

**STATEMENT OF FACTS** .................................................................................................... 1

**ARGUMENT** ......................................................................................................................... 5

    Legal Standard ................................................................................................................ 5

    POINT I ............................................................................................................................. 6

        Plaintiffs Fail to State a Claim Under Title IX ......................................................... 6

    POINT II ............................................................................................................................ 9

        Plaintiffs Fail to State a Claim Under the Rehabilitation Act .................................... 9

    POINT III ......................................................................................................................... 11

        The Individual Defendants Are Immune from Liability Under State Law ............... 11

    POINT IV ......................................................................................................................... 14

        At Least Some of Plaintiffs' Claims Are Time-Barred .......................................... 14

**CONCLUSION** .................................................................................................................... 15

## PRELIMINARY STATEMENT

Defendants submit this memorandum of law in support of their motion to dismiss the Complaint filed June 28, 2021 pursuant to Fed. R. Civ. P. 12(b)(6).

In their Complaint (ECF No. 1), Plaintiffs allege that D.S. (the "Student"), a student classified with educational disabilities, was subjected to bullying by other students on account of his sexual orientation, and that school administrators/employees failed to take adequate corrective measures. Plaintiffs further allege that Defendants themselves discriminated against D.S., for example, by not allowing the Student to form a Gay-Straight Alliance ("GSA"). Plaintiffs assert that these alleged acts and omissions give rise to federal claims under Title IX and Section 504 of the Rehabilitation Act, and Plaintiffs also assert state law claims under the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and the New York Civil Rights Law.

As explained more fully below, Plaintiffs fail to state a claim under Title IX or Section 504 of the Rehabilitation Act, because, among other things, they fail to allege that Defendants acted with deliberate indifference, and fail to allege that the Defendants or any students discriminated against the Student on account of his disabilities. In addition, the individually-named Defendants, school administrators and teachers, are entitled to absolute immunity from any state law claims, and at least some of Plaintiffs' claims are time-barred.

For these reasons, the Court should dismiss the Complaint in its entirety.

## STATEMENT OF FACTS

Plaintiffs allege that D.S. (the "Student") is a student classified with educational disabilities who self-identifies as gay. *See* Complaint ¶¶ 42, 51. They allege that the Student attended I.S. 126Q, a New York City public school, during the 2017-2018 and 2018-2019 school years. *See, e.g., id.* ¶ 42.

Plaintiffs allege that, while attending I.S. 126Q, the Student was frequently subject to harassment from other students on account of his "sexual orientation," "gender identity," and "gender expression." *See id.* ¶¶ 54-57, 59-60, 62-64, 71-72, 74-75, 77-78, 80, 82, 86, 90-93, 123, 125, 133, 151-152, 161, 164, 167, 175, 177, 181-183. In particular, Plaintiffs recount multiple incidents in which students allegedly "mocked, taunted, and harassed [the Student]," including incidents in which students: "told [the Student] that being gay made him gross, that his dads were disgusting, and that his family was 'wrong' in the eyes of God"; called [the Student] a "faggot" and used other homophobic slurs; "grabbed the hat [the Student] was wearing off [his] head" and "smacked [the Student] in the head"; told [the Student] that his parents were 'shit' and a 'mistake created by Jesus'"; told the Student that it was "so sad" that he has two fathers; spread rumors about the Student; "push[ed] [the Student] to the floor"; told the Student to "squish those balls" while he was "using stress balls to calm himself down"; "mock[ed] [the Student's] pronunciation of words he was reading"; "thr[ew] pencils at [the Student]" and confronted the Student "when [he] threw a pencil back"; "shoved [the Student] from behind repeatedly" on one occasion; "whisper[ed] about [the Student], laugh[ed] at him, and put[ ] up their middle fingers at [the Student] during class"; told the Student "you act more like a girl than I do"; said that gays "are disgusting"; "constantly rolled their eyes and made belittling comments when [the Student] gave presentations about LGBT-related issues"; "outed [the Student] to others without his consent"; and made other disparaging comments about the Student and his parents. *See id.*

Although Plaintiffs allege that the Student has one or more educational disabilities, Plaintiffs do not allege that Defendants or any students discriminated against the Student on account of his disabilities. *See generally id. But see infra* (discussing Plaintiffs'

allegations regarding denial of free appropriate public education under the Individuals with Disabilities Education Act).

Plaintiffs allege that Defendants took various actions in response to alleged bullying. *See, e.g.*, *id.* ¶¶ 67, 72-73, 81, 84-85, 87, 91, 94, 96, 119, 128, 130, 135, 140, 145, 147, 156, 158-159, 162-163, 165, 168-173, 176, 184, 186-187. In particular, Plaintiffs allege that Defendants and other DOE employees: "[P]roposed that [the Student] eat sitting at a table with Dean Edwards"; "[P]hysically intervened to prevent [an] assault"; Required other students to engage in mediations with the Student; investigated no fewer than 18 incidents of alleged bullying (including by interviewing DOE staff, D.S., and other students/witnesses); Consistently reached determinations regarding whether allegations of bullying were substantiated (finding, on multiple occasions, that bullying/harassment had, in fact, occurred); Notified the Student's parents about alleged instances of bullying on more than one occasion; Referred allegations of bullying to other offices/authorities for investigation; Met with the Student's parents to discuss allegations of bullying and communicated with the Student's parents in writing regarding the allegations; Proposed steps for addressing the alleged bullying; Met with DOE officials (for example, the Director of Student Services for DOE's Queens North Borough Office) to discuss the allegations of bullying; Advised the Student's parents about Home Instruction as an alternative placement for the Student; Properly documented allegations of bullying in DOE's Online Occurrence Reporting System ("OORS"); and, Notably, took disciplinary action on multiple occasions (for example, by notifying other students' parents of alleged misbehavior). *See id.* Nonetheless, Plaintiffs are dissatisfied with the results of these steps, and appear to allege that this shows that the actions taken by Defendants were not sufficient. *See id.*

3

Plaintiffs allege that as a result of the alleged bullying, they removed the Student from I.S. 126Q during the 2018-2019 school year. *See id.* ¶¶ 198-201.

Plaintiffs further allege that Defendants did not allow the school to create a "Gay-Straight Alliance" ("GSA"), which would have served both LGBTQ+ and heterosexual students. *See id.* ¶¶ 99-105. Plaintiffs allege that Defendant Angueira stated that the school would not allow a GSA to be created "because of concerns that parents of students from traditional religious backgrounds might find the concept offensive." *Id.* ¶ 102. Plaintiffs allege that, as an alternative to a GSA, a DOE employee suggested that the school could create a "Diversity Club," which apparently would have served the same students as a GSA. *See id.* ¶ 105.

Plaintiffs also allege that Defendant Kerns did not allow the Student to discuss his transgender family member during a class presentation, explaining that discussion of this kind was "too personal." *Id.* ¶ 107. Plaintiffs allege that Kerns also later explained that, during class presentations concerning current events, "we do steer students away from personal conversations." *Id.* ¶ 108. Plaintiffs appear to allege that Kerns' alleged actions constituted direct discrimination.

Finally, Plaintiffs allege that the Defendants' failure to address bullying allegations constituted a denial of free appropriate public education ("FAPE") under the Individuals with Disabilities Education Act ("IDEA"). In particular, Plaintiffs allege that the bullying impacted the Student's ability to learn. *See, e.g.*, *id.* ¶ 225. Plaintiffs allege that "Defendant Kerns and other members of the [individualized education program or] IEP team refused to meaningfully discuss the bullying that [the Student] was enduring at school" at an IEP meeting, and that the IEP developed for the Student "included no interventions, services, or supports to mitigate the deleterious effects of peer bullying on [the Student's] ability to access

4

an[ ] appropriate education." *Id.* ¶¶ 208-209. Plaintiffs allege that an impartial hearing officer later concluded that "the failure to address the bullying situation that the Student experienced constituted a deprivation of FAPE." *Id.* ¶ 230.

Plaintiffs contend that these allegations give rise to federal claims under Title IX and Section 504 of the Rehabilitation Act, as well as state law claims under the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and the New York Civil Rights Law. *See id.* ¶¶ 233-262. Plaintiffs name the New York City Department of Education ("DOE"), the New York City Board of Education ("BOE"), and various school administrators/employees as Defendants. *See id.* ¶¶ 23, 25, 28-33.

For the reasons set forth below, however, Plaintiffs' allegations fail to state a claim under any of these provisions. Accordingly, the Court should dismiss the Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

<u>**ARGUMENT**</u>

<u>**LEGAL STANDARD**</u>

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court should "accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Phelps v. Kapnolas*, 308 F.3d 180, 184 (2d Cir. 2002) (internal quotes omitted). Still, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

5

At a minimum, then, the pleading must set forth sufficient information for the court to determine whether the allegations support some recognized legal theory. *Spinale v. USDA*, 621 F. Supp. 2d 112, 119 (S.D.N.Y. 2009) (citing *Teletronics Proprietary, Ltd. v. Medtronic, Inc.*, 687 F. Supp. 832, 836 (S.D.N.Y. 1988)), *aff'd*, 356 F. App'x 465 (2d Cir. 2009). Thus, bare "'labels and conclusions,'" "'formulaic recitation[s] of the elements of a cause of action,'" "'naked assertion[s] devoid of 'further factual enhancement,'" or allegations that "do not permit the court to infer more than the mere possibility of misconduct" cannot, in and of themselves, state a plausible claim. *See Iqbal*, 550 U.S. at 678–79 (alterations in original) (quoting *Twombly*, 550 U.S. at 555).

## POINT I

### PLAINTIFFS FAIL TO STATE A CLAIM UNDER TITLE IX

Plaintiffs fail to state a claim for sexual harassment or sex-based discrimination under Title IX. In *Gebser v. Lago Vista Independent School District* and *Davis v. Monroe County Board of Education*, the Supreme Court:

> [E]xamined the conditions under which schools would be liable for monetary damages under Title IX for sexual harassment of students by teachers or peers in cases brought by private plaintiffs. Among other things, the Supreme Court's decisions established that a school could be subject to monetary liability only when a school exhibited 'deliberate indifference' that subjected a student to harassment; that harassment must take place in a context 'subject to the school district's control' and that liability exists for harassment 'that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.' Further, a school is liable in damages only when an appropriate person, who is, 'at a minimum, an official of the recipient entity with

> authority to take corrective action to end the
> discrimination,' 'has actual knowledge of
> discrimination and fails to adequately respond.'

*New York v. Unites States Dep't of Educ.*, 477 F. Supp. 3d 279, 289 (S.D.N.Y. Aug. 9, 2020)

(*quoting Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) *and Davis v. Monroe Cty.*

*Bd. of Educ.*, 526 U.S. 629 (1999)) (internal citations omitted).

"[A] school district's actions are only deliberately indifferent if they were 'clearly

unreasonable in light of the known circumstances.' Thus, when weighing the adequacy of a

response, a court must accord sufficient deference to the decisions of school disciplinarians."

*Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 666 (2d Cir. 2012) (*quoting Davis*, 526 U.S.

at 643). "[C]ourts should refrain from second-guessing the disciplinary decisions made by school

administrators." *Davis*, 526 U.S. at 648 (citation omitted)). "To that end, victims do not have a

right to specific remedial measures." *Zeno*, 702 F.3d at 666 (*citing Davis*, 526 U.S. at 648).

Here, the Complaint fails to allege that school administrators/employees acted

with deliberate indifference. Indeed, Plaintiffs allege that in response to allegations of bullying,

Defendants and other DOE employees took numerous actions in response to these allegations.

Plaintiffs concede that the Defendants and others at DOE: "[P]roposed that D.S. eat sitting at a

table with Dean Edwards"; "[P]hysically intervened to prevent [an] assault"; Required other

students to engage in mediations with D.S.; Frequently investigated allegations of bullying

(including by interviewing DOE staff, D.S., and other students/witnesses); Consistently reached

determinations regarding whether allegations of bullying were substantiated (finding, on multiple

occasions, that bullying/harassment had, in fact, occurred); Notified D.S.'s parents about alleged

instances of bullying on more than one occasion; Referred allegations of bullying to other

offices/authorities for investigation; Met with D.S.'s parents to discuss allegations of bullying

and communicated with D.S.'s parents in writing regarding the allegations; Proposed steps for addressing the alleged bullying (such as encouraging a teacher to revise her lesson plans to address the allegations of bullying); Met with other DOE officials (for example, the Director of Student Services for DOE's Queens North Borough Office) to discuss the allegations of bullying; Advised D.S.'s parents about alternative educational settings for D.S.; Properly documented allegations of bullying in DOE's Online Occurrence Reporting System ("OORS"); and, Notably, took disciplinary action on multiple occasions (for example, by notifying students' parents of alleged misbehavior). *See, e.g.*, Complaint ¶¶ 67, 72-73, 81, 84-85, 87, 91, 94, 96, 119, 128, 130, 135, 140, 145, 147, 156, 158-159, 162-163, 165, 168-173, 176, 184, 186-187. Accordingly, Plaintiffs' allegations show both that DOE employees were not deliberately indifferent to the alleged bullying, and that Defendants actually went to great lengths in their attempts to mitigate the situation. Plaintiffs therefore fail to state a claim under Title IX.

While Defendants sympathize with the Student and expressly disavow the acts of bullying described in the Complaint, Defendants should not be held liable for the actions of the accused students, either expressly or by implication. Moreover, Defendants maintain – and the Complaint acknowledges – that Defendants took appropriate measures to respond to the purported bullying. The remedial actions described in the Complaint are not those of a "deliberately indifferent" school administration – not even close. Rather, the allegations in the Complaint evince repeated efforts, by school administrators, to prevent and remedy harms allegedly caused to the Student by others. The allegation that these measures were not ultimately effective does not establish deliberate indifference.

Plaintiffs also fail to allege direct discrimination under Title IX. While Plaintiffs allege that Defendants did not allow the school to create a Gay-Straight Alliance ("GSA"), by its

very definition, the GSA would have served both LGBTQ+ and heterosexual students, and the decision not to create a GSA therefore cannot reasonably be described as "sex-based." Moreover, Plaintiffs themselves allege that the school agreed to create a "Diversity Club," which would have served the same students as a GSA, including LGBTQ+ students. This belies any argument that Defendants acted with discriminatory intent.

In addition, Plaintiffs allege that Defendant Kerns did not allow the Student to discuss his transgender family member during a class presentation. However, Plaintiffs do not at all allege that Kerns treated the Student differently on account of *the Student's* sexual orientation. Moreover, Plaintiffs allege that Kerns stopped the Student's presentation because it was becoming "too personal" (not because the Student is gay), and that Kerns later explained that, during class presentations concerning current events, "we do steer students away from personal conversations." *Id.* ¶ 107-108. Plaintiffs do not allege that other students were treated differently from the Student, and certainly not on account of sex. Thus, again, Plaintiffs fail to allege direct discrimination under Title IX.

## POINT II

### PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE REHABILITATION ACT

In addition, Plaintiffs fail to state a claim under Section 504 of the Rehabilitation Act. As this Court recently recognized:

> In cases brought under the Rehabilitation Act and the ADA for harms caused by school bullying, district courts in this Circuit have applied the three-part test developed in *Davis v. Monroe* to determine whether schools are liable for peer-to-peer harassment. Under that test, 'individual defendants need not be, themselves, motivated by discriminatory animus: rather, liability for discrimination may be imputed to teachers and

9

> administrators for students' peer-on-peer harassment
> where those defendants displayed 'deliberate
> indifference' to the underlying harassment, where
> the harassment is itself motivated by discriminatory
> animus.' Applying this test, district courts in this
> Circuit have dismissed ADA or Rehabilitation Act
> claims where a complaint failed to allege that the
> bullying occurred because of the victim's disability.

*T.J. ex rel. B.W. v. Bd. of Educ.*, 2019 U.S. Dist. LEXIS 171583 at *43 (S.D.N.Y. Sept. 30, 2019)

(emphasis in original) (internal citations omitted).

In the alternative,

> claims under the Rehabilitation Act and section 504
> may be predicated on the claim that a disabled
> student was 'denied access to a free appropriate
> education [or FAPE].' In FAPE cases under the
> Rehabilitation Act and ADA, the harm is the denial
> of the student's right, under the IDEA, to an
> appropriate education. . . . [A] claim for a denial of
> a FAPE brought under those statutes requires
> 'something more than a mere violation of the
> IDEA.' That 'something more' is evidence that the
> defendant acted with 'bad faith or gross
> misjudgment.' . . . '[I]ntentional discrimination may
> be inferred when a school district acts with gross
> negligence or reckless indifference in depriving a
> child of access to a FAPE.'

*T.J. ex rel. B.W. v. Bd. of Educ.*, 2019 U.S. Dist. LEXIS 171583 at *45-47 (S.D.N.Y. Sept. 30,

2019) (internal citations omitted).

Here, while Plaintiffs allege that D.S. has an IEP, they fail to allege that D.S. was

subjected to bullying on account of his disabilities, or that Defendants themselves discriminated

against D.S. on account of his disabilities. Rather, Plaintiffs repeatedly allege that the Student

was bullied due to his "sexual orientation," "gender identity," and/or "gender expression." *See,*

*e.g.*, Complaint ¶¶ 55. Under these circumstances, Plaintiffs fail to state a claim under Section

504 of the Rehabilitation Act based on disability-based discrimination. *Id.* at *50 ("The

10

Amended Complaint fails to allege a section 504 or ADA violation on a theory of disability-based discrimination because the Amended Complaint does not allege any facts to plausibly allege that B.W. was bullied because of his disability. Instead, B.W. was bullied because of his perceived sexual orientation.").

Plaintiffs also fail to state a claim under Section 504 based on any alternate theory of liability. Although Plaintiffs allege that Defendants' failure to address bullying allegations constituted a denial of FAPE under the IDEA, Plaintiffs clearly fail to allege "gross misjudgment." *T.J. ex rel. B.W.*, 2019 U.S. Dist. LEXIS 171583 at *45. Rather, as explained above, Plaintiffs allege that Defendants went to great lengths in their attempts to mitigate the alleged bullying. Accordingly, Plaintiffs fail to state a claim under Section 504. *Id.*; *see also Saggio v. Sprady*, 475 F. Supp. 2d 203, 211(E.D.N.Y. Feb. 16, 2007) ("[W]here a plaintiff asserts that school officials failed to appropriately discipline students perpetrating the harassment, the Court must give substantial deference to school administrators' determinations.").

## POINT III

### THE INDIVIDUAL DEFENDANTS ARE IMMUNE FROM LIABILITY UNDER STATE LAW

The individually-named Defendants are entitled to absolute immunity from Plaintiffs' state law claims. "New York law provides absolute immunity for state and local employees when they perform discretionary, as opposed to ministerial, functions." *Tenenbaum v. Williams*, 193 F.3d 581, 606 (2d Cir. 1999) (citing *Tango v. Tulevech*, 61 N.Y.2d 34, 40 (1983)). "This protection extends to the state itself as well as its subdivisions." *Id.* (citing *Arteaga v. State*, 72 N.Y.2d 212, 216 (1988); *see also McLean v. City of New York*, 12 N.Y.3d 194, 203

11

(2009) (municipalities are absolutely immune from claims arising out of discretionary acts); *Lauer v. City of New York*, 95 N.Y.2d 95, 99 (2000) ("A public employee's discretionary acts . . . may not result in the municipality's liability even when the conduct is negligent."). A discretionary act is one "involv[ing] the exercise of reasoned judgment." *Lauer*, 95 N.Y.2d at 95.

In this case, Plaintiffs complain about the performance of discretionary acts, namely, decisions by school administrators/employees regarding how to investigate allegations of bullying and which remedial measures to take, if any. *See, e.g.*, *Albert v. Carovano*, 824 F.2d 1333, 1348 (2d Cir. 1987) ("[T]he imposition of discipline by . . . administrators is highly fact-specific and discretionary."); *Doe v. Torrington Bd. of Educ.*, 2017 U.S. Dist. LEXIS 124031 at *20 (D. Conn. Aug. 7, 2017) ("Supervising students is also a discretionary duty, as it requires the exercise of judgment."); *DeFabio v. E. Hampton Union Free Sch. Dist.*, 658 F. Supp. 2d 461, 494 (E.D.N.Y. Sept. 30, 2009) ("Decisions that defendants make on a day-to-day basis to ensure the safety and welfare of the students under their care are necessarily discretionary ones."); *see also Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 648 (1999) ("[C]ourts should refrain from second guessing the disciplinary decisions made by school administrators."); *Saggio*, 475 F. Supp. 2d at 211 ("[W]here a plaintiff asserts that school officials failed to appropriately discipline students perpetrating the harassment, the Court must give substantial deference to school administrators' determinations."). Accordingly, the individually-named Defendants are entitled to absolute immunity from Plaintiff's state law claims, and any such claims should be dismissed. *Id.*

Notably, Plaintiffs do not allege that Defendants failed to exercise discretion – only that Defendants chose to exercise their discretion in the "wrong" way. In particular, Plaintiffs complain that the many remedial actions taken by Defendants, including disciplinary

actions against other students, were not sufficient. *See, e.g.*, Complaint ¶ 158 ("[T]he school took no remedial action in response to this incident beyond notifying the offending students' parents."); *id.* ¶ 186 ("[T]he school took no remedial action in response beyond sending letters to D.S.'s parents and to the parents of the student who passed the notes."). It is implied that Defendants should have acted differently, and more specifically, that they should have levied harsher punishments against students accused of bullying, even in circumstances where allegations could not be substantiated. However, parents do not, and should not, control the decision-making of school administrators when it comes to student discipline. Rather, decisions regarding whether and how to discipline a student accused of bullying fall strictly within the domain of school administrators. This is appropriate because school administrators, not parents, are best situated to determine whether allegations of bullying are true and, if so, to impartially decide which remedial actions are appropriate. There is no one-size-fits-all approach to student discipline, and actions that may be appropriate in one case may be wholly inappropriate in another (for example, because allegations of bullying cannot be substantiated, because the accused student has no history of discipline, or because other forms of discipline will be equally effective). We therefore leave decisions regarding discipline to the discretion of school administrators, who are able to consider *all* relevant circumstances when deciding whether and how to discipline a student. *See, e.g.*, *Albert*, 824 F.2d at 1348 ("[T]he imposition of discipline by . . . administrators is highly fact-specific and discretionary.").

In each case of alleged bullying, school administrators must not only act to ensure a safe learning environment for the accuser, but also to protect the due process rights of the accused student. This may be overlooked by well-meaning parents, but it must be considered by

school administrators. Thus, incidents of alleged bullying are investigated, and only appropriate action is taken.

## POINT IV

### AT LEAST SOME OF PLAINTIFFS' CLAIMS ARE TIME-BARRED

Finally, some of Plaintiffs' claims are time-barred and should be dismissed. "The statute of limitations for a Title IX claim based on conduct occurring in New York is three years." *Irrera v. Humpherys*, 695 F. App'x 626, 628 (2d Cir. 2017) (citing *Curto v. Edmundson*, 392 F.3d 502, 504 (2d Cir. 2004)). Similarly, "[a]ll actions under Section 504 are governed by the state statute of limitations applicable to personal injury actions. In New York, the applicable statute of limitations is three years." *K.H. v. New York City Dep't of Educ.*, 2014 U.S. Dist. LEXIS 108393 at *10-11 (E.D.N.Y. Aug. 6, 2014) (internal quotation marks omitted) (internal citations omitted).

In addition, claims asserted under the NYSHRL or the NYCHRL must also be brought within three years, as must claims asserted under New York Civil Rights Law § 40-c. *See, e.g.*, *Shojae v. Harlem Hosp. Ctr.*, 2020 U.S. Dist. LEXIS 65209 at *6 (S.D.N.Y. Apr. 13, 2020) (statute of limitations for claims brought under NYCHRL); *Pratt v. Indian River Cent. Sch. Dist.*, 803 F. Supp. 2d 135, 148, 2011 U.S. Dist. LEXIS 32596 at *29 (N.D.N.Y. Mar. 28, 2011) (concerning the New York Civil Rights Law); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998) (citing N.Y. C.P.L.R. § 214(2)) (concerning the NYSHRL).

In this case, while Plaintiffs commenced this action on June 28, 2021, many of their claims are predicated upon events that allegedly occurred in 2017 and early 2018 (*i.e.*, more than three years ago). These claims could, and should, have been brought at an earlier time. As Plaintiffs failed to raise claims that arose on or before June 27, 2018 within the applicable three-

14

year statute of limitations, any such claims, including all of Plaintiffs' claims relating to the 2017-2018 school year, are time-barred and should be dismissed.[1]

## <u>CONCLUSION</u>

For the reasons set forth above, Defendants respectfully request that their motion to dismiss the Complaint be granted, that this action be dismissed in its entirety with prejudice, and that the Court grant Defendants such other and further relief as it deems just and proper.

Dated:        New York, New York
              September 2, 2021

                                        **GEORGIA M. PESTANA**
                                        Corporation Counsel of the
                                          City of New York
                                        *Attorney for Defendants*
                                        100 Church Street, 2nd Floor
                                        New York, New York 10007
                                        (212) 356-0885

                          By:    _____/s/_____
                                 Copatrick Thomas
                                 Assistant Corporation Counsel

---

[1]   The last day of the 2017-2018 school year was June 26, 2018.

15